# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 24-70005

GARCIA GLENN WHITE,
Petitioner-Appellant,

v.

BOBBY LUMPKIN, DIRECTOR,
Texas Department of Criminal Justice,
Correctional Institutions Division,
Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas,
No. 4:02-cv-1805
(Capital Case)

## OPPOSED MOTION FOR STAY OF EXECUTION

## ***SCHEDULED FOR OCTOBER 1, 2024***

Petitioner-Appellant Garcia Glenn White, through counsel and pursuant to Rule 8, Fed. R. App. P. and Fifth Circuit Rule 8.1, respectfully requests that this Court stay his execution pending appeal.

## BACKGROUND

In 2014, White's appointed counsel, Patrick McCann, demonstrated that he knew there was evidence that White is intellectually disabled and therefore ineligible for execution under *Atkins v. Virginia*.[1] *See* ROA.1259-63. McCann had represented many people on death row, including Bobby Moore, ROA.1261, whose case led the Supreme Court to rebuke Texas law governing intellectual disability. *See Moore v. Texas*, 581 U.S. 1 (2017) (*Moore I*); *Moore v. Texas*, 586 U.S. 133 (2019) (*Moore II*). McCann thus knew well that current legal and scientific criteria favored such an *Atkins* claim for White. ROA.1270. Nonetheless, McCann did not raise an ID claim in state court, and he allowed the one-year statute of limitations to pass without raising it in federal court. ROA.1258-60. In the case of Dexter Johnson, another of McCann's clients, McCann admitted that he had similarly allowed a statute of limitations to expire to gain a litigation advantage at the expense of his client's ability to secure merits review of his claim in federal court. ROA.1262. The district in that case correctly held that, "Courts cannot countenance any litigation strategy based on withholding grounds for relief. ROA.1324.

---

[1] 536 U.S. 304 (2002).

When White learned these facts, on September 11, 2024, he sought new, conflict-free counsel in the district court, and a stay under 28 U.S.C. § 2251(a)(3). *See* ROA.1290-93 (White decl.); ROA.1248-85 (motion). The district court denied that motion without engaging in the legal inquiry required by the United States Supreme Court and this Court. ROA.2054-70. White has appealed that denial. ROA.2071-72.

White asks the Court stay his October 1, 2024, execution date in conjunction with reversing the district court's denial and appointing new counsel to represent him. Alternatively, he asks for a stay in conjunction with the Court's consideration of this appeal.

## ARGUMENT

### I. Governing Law

Under *McFarland v. Scott*, 512 U.S. 849 (1994), and 28 U.S.C. § 2251(a)(3), this Court has jurisdiction to enter a stay of execution to ensure a defendant's statutory right to counsel under 18 U.S.C. § 3599 is "effective." *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (internal citation and quotation omitted); *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018) (unpublished) (ROA.1542-44) (denying motion to vacate stay because stay was "clearly" supported under § 2251(a)(3)); *In re Hearn*, 376 F.3d 447, 457-58 (5th Cir. 2004) (applying *McFarland* and

granting a stay of execution where counsel abandoned petitioner and new counsel was appointed to develop facts and prepare application to file federal successor petition raising *Atkins*).

In 28 U.S.C. § 2251(a)(3), Congress provided courts authority to issue a stay of execution for up to 90 days—even in the absence of a pending proceeding—when courts appoint substitute counsel under § 3599. This provision reflects the Supreme Court's holding in *McFarland v. Scott*, 512 U.S. 849, that "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." *Id*. at 857. When this opportunity is not afforded, '[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.'" *Id*. at 858; *id*. (citing *Barefoot v. Estelle,* 463 U.S. 880, 889 (1983)); *see Gutierrez*, No. 18-70028, at *2 (5th Cir. Sept. 10, 2018) ("[i]f a court exercises its discretion to grant a stay at the time of appointing counsel, a 90-day stay serves the purpose of allowing counsel time to determine if an application for habeas corpus relief is appropriate.").

The Court may also grant a stay under 28 U.S.C. § 2251(a)(1), which provides that "[a] justice or judge of the United States before whom a habeas corpus proceeding is pending, may … stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding."

## II. White Requires Conflict-Free Counsel to Demonstrate that He Is Ineligible for Execution Because He Is Intellectually Disabled.

Title 28, Section 2251 of the U.S. Code authorizes courts to stay executions in connection with pending litigation § 2251(a)(1), or in connection with the appointment of counsel, whether or not pending litigation exists, § 2251(a)(3). White is entitled to a stay under either provision.

### A. A stay is warranted in conjunction with appointment of conflict-free counsel.

White has a clear right to conflict-free representation under 18 U.S.C. §§ 3599(a)(1) & (e) and *Christeson v. Roper*, 574 U.S. 373 (2015) for the reasons articulated in White's motion for substitution and brief on appeal.

In summary, White demonstrated that his appointed counsel Patrick McCann is conflicted because White has a strong potential claim of intellectual disability that may be entertained by a federal court, but

5

McCann cannot effectively raise it. This is so because McCann failed to file a potentially meritorious *Atkins* claim for White in federal court. ROA.1267-72. Under the controlling interpretation of the statute of limitations, raising White's ineligibility for execution would require McCann to assert his own dilatory conduct as grounds for equitable tolling. In *Christeson*, the Supreme Court recognized that an attorney who must assert his own misconduct has a disabling conflict. 574 U.S. at 379. Because McCann suffers a disabling conflict, White has asked that he be replaced.

The district court refused to consider whether McCann had a disabling conflict of interest in denying substitution. ROA.2069.

This Court has repeatedly recognized the authority to stay an execution under *McFarland* and § 2251(a)(3). It has upheld or issued stays even when initial habeas proceedings have concluded and the likeliest "available post-conviction process" under 18 U.S.C. § 3599(e), is successive litigation. *E.g.*, *In re Hearn*, 376 F.3d 447, 457-58 (5th Cir. 2004) (applying *McFarland* and granting a stay of execution where counsel abandoned petitioner and new counsel was appointed to develop facts and prepare application to file federal successor petition raising *Atkins*);

*Battaglia*, 824 F.3d at 475 (reversing denial of motion for appointment of § 3599 counsel and issuing stay of execution).

This Court has also upheld or granted stays of execution when, as here, a scheduled execution was imminent. For example, in *Hearn*, the petitioner sought appointment the day before his execution and received a temporary stay from the Fifth Circuit until it could thoroughly address the case, after which it concluded that he was entitled to a *McFarland* stay. 376 F.3d at 450. Battaglia filed his appointment motion 20 days before his scheduled execution, seeking counsel to investigate the possibility of a *Ford* claim that he was incompetent to be executed. *Id.*[2]

White seeks the same relief here. He provided ample evidence that his appointed counsel is conflicted—a fact that the State does not dispute. He requires new counsel to investigate and raise an *Atkins* claim and to

---

[2] Although *Hearn* is similar to White's case, the district court distinguished it by noting that, there, the petitioner was without counsel. ROA.2069, n.6., but that would be the case in any stay under § 2251(a)(3), which permits stays when new counsel has been appointed. Moreover, contrary to the district court's view, White is and has been "without an attorney who has litigated and can continue to litigate an *Atkins* claim on his behalf." Doing so would force McCann to choose between his own interests in minimizing or avoiding the obvious conflict he finds himself in and exploiting that conflict to assist his client to overcome a statutory bar and raise a potentially meritorious claim.

7

investigate grounds for equitably tolling such a claim, and he seeks a stay of his execution to give meaningful effect to the appointment of conflict-free attorneys.

### B. White seeks a stay under 28 U.S.C. § 2251(a)(1).

This Court may also grant a stay, of undetermined length, under § 2251(a)(1), which grants authority to delay an execution in conjunction with an ongoing proceeding—here, White's pending appeal.

Ordinarily, "a stay of execution is an equitable remedy." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). In the context of an appeal, the following four factors are considered:

(1) whether the applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citations and quotations omitted); *see also In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014) (applying *Nken* factors to motion for stay of execution).

Those factors weigh in favor of a stay.

*Likelihood of success.* White has made a strong showing of likely success on his appeal. As he argued in the district court, and continues to argue in this court, he is entitled to conflict-free counsel.

The underlying issue he seeks new counsel to raise is also potentially meritorious. White's intellectual deficits have been at least subtext in his case since his 1996 sentencing hearing. In 2008, a neuropsychologist obtained an IQ score of 78—a score that a doctor in 2024 opined would, if properly adjusted, likely be 68 today—squarely within the range for intellectual disability. ROA.1258; ROA.1370. In addition, the few affidavits that have been gathered in support of an adaptive deficits indicate that White's cognitive deficits have a profound effect on his day-to-day functioning. ROA.1481-89.

*Irreparable harm.* A stay is necessary, because if White is unable to secure conflict-free representation, he will be executed before he can demonstrate his ineligibility for the death penalty. *See Barefoot v. Estelle*, 463 U.S. 880, 889 (1983) ("Approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."); *see also Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (holding that a court

9

may stay an execution if needed to resolve issues raised in initial petition). There is no remedy for that harm.

*Harm to other parties.* The State's interest in finality and the survivors' interest in closure are significant. However, they must be viewed in context. White is incarcerated, as he has been for nearly thirty years. He has posed no threat to his peers or the staff at Polunsky Unit, where he lives. If he is found not to be intellectually disabled, the State retains the ability to see that his sentence is carried out. These facts mitigate the harm to other parties, especially in light of the irreparable harm of executing a person who is ineligible by virtue of disability for execution.

*Public interest.* Fifty-nine percent of voting Americans oppose the death penalty for persons with intellectual disabilities. *See* Death Penalty Information Center, *New Poll Finds Bipartisan Opposition to Use of the Death Penalty as It Is Actually Administered*, at https://deathpenaltyinfo.org/new-poll-finds-bipartisan-opposition-to-use-of-the-death-penalty-as-it-is-actually-administered, updated June 11, 2024 (discussing poll of voters regarding execution of persons with mental and intellectual

deficits).[3] Moreover, the prohibition on executing persons with intellectual disabilities rests on the belief that those persons are less morally culpable for their conduct than their peers. *Atkins,* 536 U.S. at 320. These public interests weigh in favor of a stay so that White's claim can be investigated and raised by conflict-free counsel.

### III. The Equities Support a Stay

As evidenced by the district court's erroneous decision, White brought his claim "'at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Therefore, no "'strong equitable presumption against the grant of a stay'" applies here. *Ibid.*

White raised both his appointed counsel's disabling conflict and need for a stay in the district court. Rather than apply the governing law to those claims, however, the district court abdicated its role in total deference to this Court. But for that legal error, White would have received

---

[3] The IQ score the respondents were asked to consider was 75 or below. The percentage of persons disapproving was virtually the same in both major U.S. political parties. Death Penalty Information Center, *New Poll Finds Bipartisan Opposition to Use of the Death Penalty as It is Actually Administered*, at https://deathpenaltyinfo.org/new-poll-finds-bipartisan-opposition-to-use-of-the-death-penalty-as-it-is-actually-administered, updated June 11, 2024

a stay in the district court. Indeed, the district court anticipated both that White might return to request a stay anew and that the court might, at that point, grant the request—it denied White's motions without prejudice. ROA.2070.

Although time is short, White has not been dilatory. He moved the district court to appoint conflict-free counsel within two days of learning that McCann's development and presentation of his intellectual disability evidence was tainted by his own professional interests. Because McCann did not inform White of the facts necessary to make this discovery, White is not responsible for any delay.

## CONCLUSION

For the foregoing reasons, this Court should grant a stay of execution.

        Respectfully submitted,

        MAUREEN FRANCO
        Federal Public Defender
        Western District of Texas

        /s/ Tivon Schardl
        TIVON SCHARDL
        Chief, Capital Habeas Unit
        DONNA COLTHARP
        JOSHUA FREIMAN
        919 Congress Ave., Suite 950
        Austin, Texas 78701
        (737) 207-3010
        tivon_schardl@fd.org

        *Counsel for Appellant*

DATED: September 25, 2024

# CERTIFICATES OF SERVICE AND COMPLIANCE

I do hereby certify that on September 25, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all registered users and counsel of record for Appellee.

This document complies with the type-volume limit of Fed. R. App. P. 27(a)(2)(B) because this document contains fewer than 5,200 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 10.

<u>/s/ Tivon Schardl</u><br>
Tivon Schardl<br>
Counsel for Appellant

DATED: September 25, 2024